## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

EDWARD RANDOLPH,

                              Plaintiff,

     v.

                                            9:19-CV-639[1]

J. PRIEUR, Corrections Officer                  (DNH/ATB)
Great Meadow Correctional Facility, et al.,

                             Defendants.

---

EDWARD RANDOLPH, Plaintiff, pro se
CHRISTOPHER J. HUMMEL, Asst. Attorney General, for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge. Presently before the court is a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), filed by defendant Annucci and Venetozzi. (Dkt. No. 31). Plaintiff has responded in partial opposition to the motion. (Dkt. No. 37). This court recommends granting the motion of defendant Annucci, based on his arguments and the plaintiff's consent to his dismissal. The court recommends granting defendant Venetozzi's motion to dismiss only in part, as explained further below.

## I. __Facts__

The defendants have outlined the facts of this case in their memorandum of law. (Dkt. No. 31-1 at 1-3). The amended complaint in this action generally alleges Eighth Amendment excessive force and denial of medical care, together with due process

---

[1] The docket sheet indicates that there is a "member case" for this action–9:19-CV-640. However, the defendants' motion in this action applies only to the fact in this case.

violations. (Amended Complaint ("AC") (Dkt. No. 19).  As relevant to this motion to dismiss, plaintiff alleges that he was charged with disciplinary infractions as the result of incidents that occurred on August 9, 2016 and August 11, 2016.[2] (AC at p.10, ¶ 41 and p.28, ¶ 41).[3]

A superintendent's hearing with respect to both incidents was held on September 16, 2016, and plaintiff was found guilty of all charges. (AC at p.11, ¶ 44 and p.28,      ¶ 42 ). Plaintiff alleges that he was sentenced to 365 days in the Special Housing Unit ("SHU"). (AC at 11, ¶ 44).  On the same date, plaintiff filed an administrative appeal to the office of defendant Acting Commissioner Anthony Annucci. (AC at p.11, ¶ 45 and p.29, ¶ 45).  Plaintiff states that on December 1, 2016, the "Director of Special Housing"[4] notified plaintiff that the September 16, 2016 hearing was "administratively modified," and the penalty would be reduced to 270 days in SHU. (AC at p.11, ¶ 46). However, on January 18, 2017, after plaintiff contacted his attorney at Prisoners' Legal Services ("PLS"), who prepared a "Superintendent's Review and Reconsideration" of plaintiff's appeal, defendant Venetozzi notified plaintiff that the September 16, 2016 hearing had been "again reviewed," "reversed," and remanded for a new hearing. (AC at p.11, ¶ 47, and p.29, ¶ 46 and Ex. A).

---

[2] As noted by the defendants, there are some discrepancies in the dates asserted in plaintiff's amended complaint, but they appear to be typographical errors by plaintiff and do not affect the court's recommendation. (*See* Dkt. No. 31-1 at 2 n.2).

[3] The AC is a "consolidated" amended complaint.  However, plaintiff has simply attached two separate complaints together, making the "consolidated" AC difficult to review because there are similar allegations on different pages of the complaint, at different numbered paragraphs, which do not always contain identical statements.  Plaintiff has omitted certain facts in each part of the AC.

[4] The Director of Special Housing is defendant Venetozzi.

In the second part of the AC, plaintiff states that on May 10, 2017, he was notified by the hearing officer that the "Office of Special Housing and Commissioner's Office" had "dismissed all the charges and fully reversed the previous determination made by the defendant 'Jane Doe' (Hearing Officer of Initial Tier III hearing)." (AC at pp.29-30, ¶ 48). Defendants state that this refers to only to the charges resulting from the August 9, 2016 incident because plaintiff apparently had a separate hearing for the August 11, 2016 incident.[5] (Def.s' Mem. at 2-3).

Plaintiff states that he requested witnesses at the rehearing, but that many were either unavailable or could not remember due to the length of time that had passed. (AC at p.11, ¶ 48; p.29, ¶ 47). Plaintiff also complained that the hearing was not timely, and that the witness testimony was inconsistent. (*Id.*) In the first part of the AC, plaintiff also stated that he was not allowed to present a "physical demonstration" that would have established his innocence. (AC at p.12, ¶ 48). However, plaintiff does not repeat this allegation in the second half of the AC when discussing the rehearing. (AC at p.29, ¶ 47).

Plaintiff states that he was found guilty of all but two of the charges on "May 20, 2014 [sic]."[6] (AC at p.12, ¶ 49). Plaintiff states that he filed an appeal of the determination on the same day. (AC at p.12, ¶ 50). Plaintiff states that on July 20,

---

[5] In his *Peralta* waiver (discussed below), the plaintiff stated that there were two rehearings. He had one hearing relative to the August 9, 2016 incident and another hearing with respect to August 11, 2016. (Dkt. No. 9 at 4). Both hearings were held in May of 2017. (*Id.*)

[6] Plaintiff clearly does not mean to allege that he was found guilty again in May of 2014. This is a typographical error, and plaintiff meant to write 2017.

"2014,"[7] defendant Venetozzi contacted him to inform him that the penalty after the rehearing on the August 11, 2016 incident was modified from 270 days to 140 days in SHU, with a recommended loss of good time of only three months instead of six months.[8]

## II.    **Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's consideration is limited to the factual allegations as stated in the complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, and matters of which the court can take judicial notice.  *Portillo v. Webb*, No. 16 Civ. 4731 (VEC/GWG), 2017 WL 4570374, at *1 (S.D.N.Y. Oct. 11, 2017) (quoting *Brass v. Am. Film Tech.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  A court may take judicial notice of a

---

[7] Plaintiff means July 20, 2017.

[8] Plaintiff is not challenging the loss of good time in this AC because he executed a "*Peralta*" waiver at the beginning of this action. (Dkt. No. 9). *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006) (In order to avoid dismissal of his section 1983 action based on *Heck v. Humphrey*, 512 U.S. 477 (1994), the "prisoner must abandon, not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding he is attacking in his current § 1983 suit").

public record pursuant to Fed. R. Evid. 201(b).  *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

## III.  **Personal Involvement**

### A.  **Legal Standards**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction.  *Id.*  The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong.  *Id.*  Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue.  *Id.*  Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event.  *Id.*  *See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*.  *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases).  However, the court in *Conklin* ultimately determined that it was

unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058 (GLS/ATB), 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B.    Application

In plaintiff's response to defendants' motion to dismiss, he concedes that dismissal for lack of personal involvement is appropriate as to defendant Annucci. (Pl.'s Mem. ¶ 3) (Dkt. No. 37). Thus, the court need not discuss defendant Annucci and will recommend dismissal based on defendants' motion and plaintiff's response.

Plaintiff opposes dismissal with respect to defendant Venetozzi, arguing that he was personally involved in deciding the appeals of plaintiff's disciplinary hearings. (Pl.'s Mem. ¶¶ 4-11). Plaintiff also argues that, although defendant Venetozzi reversed the first hearing determination, he should not have ordered a rehearing, but should have dismissed the charges completely because the due process violations were "so severe." (Pl.'s Mem. ¶ 5). In addition, plaintiff claims that defendant Venetozzi's "modification" of the sanction after plaintiff was found guilty at the rehearing of the August 11, 2016 incident did not cure the due process violations. According to the AC, plaintiff was notified by the hearing officer that the charges relative to the August 9, 2016 incident

6

were dismissed by the "Office of Special Housing and Commissioner's Office." (AC at p.29-30, ¶ 48).

Defendant Venetozzi reversed the September 16, 2016 disciplinary hearings and sent the matter back for a new hearing on both incidents. Plaintiff argues that this action did not "cure" the alleged due process violations at the initial hearing because defendant Venetozzi reversed the guilty findings only after reconsideration, prompted by an attorney from PLS, and defendant Venetozzi did not dismiss the charges, but sent the matter back for rehearing. In order to be "personally involved" in the due process violations which occurred at the September 16, 2016 hearing, defendant Venetozzi would have to have "failed to remedy the wrong after learning about it through a report or appeal." *Williams, supra*. Reversal of the determination and remand of the matter for a new hearing amounts to "remedying" the wrong committed by the hearing officer.[9] *See Hamilton v. Fisher*, No. 9:10-CV-1066 (MAD/RFT), 2012 WL 987374, at *10 (N.D.N.Y. Mar. 22, 2012) ("to the extent Plaintiff brings due process claims against Defendant Bezio for his role in reversing the guilty findings in Plaintiff's disciplinary hearings, [they] should be dismissed for failure to state a claim").

Plaintiff's attempt to distinguish an outright reversal from a reversal for rehearing cannot succeed. Once a liberty interest is created, the purpose of procedural due process is to afford the inmate notice and an opportunity to be heard before prison officials can

---

[9] The reversal does not alter the liability of the hearing officer. Defendant Venetozzi may have been personally involved in the appeal because he allegedly handled it himself. However, by reversing the determination, he does not become personally involved in the "due process violation," which absolves him from liability for any due process violations committed by the hearing officer.

infringe upon that interest.[10]  The remedy for a procedural due process violation is due

process. *Muhmmaud v. Murphy*, No. 3:08-CV-1199 (VLB), 2009 WL 4041404, at *7

(D. Conn. Nov. 19, 2009) (citing *U.S. ex rel Bey v. Conn. State Bd. of Parole*, 443 F.2d

1079, 1089-90 (2d Cir.1971) (concluding that proper remedy for improper parole

revocation hearing was new revocation hearing), *vacated on other grounds by, Conn.

State Bd. of Pardons v. Bey*, 404 U.S. 879 (1971)).

       In this case, among other things on appeal, plaintiff argued that he was denied

witnesses.  Defendant Venetozzi reversed the determination and sent it back for

rehearing.  Thus, he remedied the due process violation after the first hearing, and

would not be personally involved in the due process violation based on a "failure to

remedy" the violation after learning about it through a report "or appeal."  Plaintiff's

argument that he did not remedy the violation until plaintiff's attorney asked for

reconsideration does not save plaintiff's claim as to any due process violations resulting

from the first hearing.

       However, with respect to the second hearing,[11] plaintiff alleges that although there

were due process violations in connection with this hearing, defendant Venetozzi merely

reduced the penalty, rather than reversing the hearing.  The case law in the Second

---

[10] The due process protections afforded inmates facing disciplinary hearings that are found to affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination.  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, inter alia, *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).  The hearing officer's findings must be supported by "some" "reliable evidence."  *Id.* (citing, inter alia, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

[11] This analysis would only apply to the "second" hearing relative to the August 11, 2016 incident because the charges relating to the August 9, 2016 incident were ultimately dismissed.

Circuit is divided on the issue of personal involvement when the superior officer merely affirms the disciplinary hearing, during which the due process violations allegedly occurred. *See Foster v. Donahue*, No. 13-CV-1177(S), 2020 WL 1855821, at *12-13 (W.D.N.Y. Apr. 13, 2020) (discussing cases).

There are cases holding that merely affirming the hearing officer's decision does not impose liability on the supervisor. *Id.* at *13 (citing *Woodward v. Mullah*, No. 08-CV- 463(A), 2009 WL 4730309, at *3 (W.D.N.Y. Dec. 7, 2009) (citing *Abdur–Raheem v. Selsky*, 598 F. Supp. 2d 367, 370 (W.D.N.Y. 2009)) (Larimer, J.) ("The only allegation concerning Selsky in the case at bar is that he affirmed the disposition of plaintiff's administrative segregation hearing, pursuant to which plaintiff was confined to SHU. . . . That is not enough to establish Selsky's personal involvement."); *Ramsey v. Goord*, No. 05-CV-47A, 2005 WL 2000144, *6 (W.D.N.Y. Aug. 13, 2005) (Skretny, J.) ("the fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS 'chain of command,' affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part")).

However, other cases hold that affirming a constitutionally defective disciplinary hearing subjects the affirming officer to liability for continuing the due process violation. *Foster v. Donahue*, 2020 WL 1855821, at *12 (citing *Tolliver v. Lilley*, No. 12-CV-971, 2014 WL 10447163, at *12 (S.D.N.Y. Oct. 24, 2014), *adopted sub nom. Tolliver v. Skinner*, No. 12-CV-971, 2015 WL 5660440 (S.D.N.Y. Sept. 25, 2015); *Murray v. Arquitt*, No. 10-CV-1440, 2014 WL 4676569, at *12 (N.D.N.Y. Sept. 18, 2014) ("The affirmation of an allegedly unconstitutional disciplinary hearing appears to

establish personal involvement."); *Delgado v. Bezio*, No. 09-CV-6899, 2011 WL 1842294, at \*9 (S.D.N.Y. May 9, 2011) ("[I]t cannot be said that the *Iqbal* holding precludes liability where, as is alleged here, supervisory personnel affirmed a decision that they knew to have been imposed in violation of Plaintiff[']s due process rights, thus continuing a deprivation of liberty without due process of law").

In *Foster v. Donahue*, the court also cited cases holding that in order for the affirming supervisor to be liable, the violation must be "ongoing." *Id.* (citing *Jamison v. Fischer*, No. 11 CIV. 4697 (RJS), 2012 WL 4767173, at \*4 (S.D.N.Y. Sept. 27, 2012) ("Bezio was not present at the hearing when this violation allegedly occurred, and the violation, if any, was isolated to the hearing itself. . . . Put simply, Bezio could not have corrected the alleged denial of Plaintiff's ability to call witnesses at the hearing because-by definition-the hearing ended before Bezio became involved through Plaintiff's appeal. . . . Therefore, Bezio was not personally involved because the alleged constitutional violation was not ongoing at the time of Plaintiff's administrative appeal.")  After discussing the case law, the court in *Foster* agreed with the cases dismissing the action against a supervisor who merely affirms the allegedly unconstitutionally defective hearing. *Foster*, 2020 WL 1855821, at \*13 (where the defendant merely "rubber-stamped" the hearing officer's decision, he was entitled to summary judgment).

Finally, some courts which have found personal involvement in the affirmance of a constitutionally defective hearing, have afforded the supervisor qualified immunity[12]

---

[12] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

due to the unsettled law in the area. *See McGriff v. Keyser*, No. 17-CV-7307, 2019 WL 6033421, at *8-9 (S.D.N.Y. Nov. 13, 2019) (A reasonable official in defendant Venetozzi's position could have been unaware that denying plaintiff's appeal would be unlawful. Although defendant Venetozzi may have "had the authority to review the events at the hearing and dismiss in whole or in part, or order a new hearing, for wrongful acts," the legal implications of his personal involvement were not "clearly established); *Colon v. Annucci*, 344 F. Supp. 3d 612, 630 (S.D.N.Y. 2018) (finding personal involvement, but dismissing based on qualified immunity in the context of a motion to dismiss for failure to state a claim) (citing *Constant v. Annucci*, No. 16-CV-3985, 2018 WL 1684411, at *6 (S.D.N.Y. Apr. 5, 2018) ("Defendant is entitled to qualified immunity because, given the uncertainty within the Circuit, it cannot be said that every reasonable official would have understood that affirming a disciplinary hearing containing procedural due process violations would violate an inmate's constitutional rights." (internal quotation marks omitted)); *Richardson v. Williams*, No. 15-CV-4117, 2016 WL 5818608, at *3 (S.D.N.Y. Oct. 5, 2016) (same)).

In this case, plaintiff appears to allege additional due process violations which occurred at the second hearing.[13]  He claims that the hearing officer would not allow

---

of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

[13] Plaintiff also alleges violations that would not implicate constitutional due process such as a violation of the "timeliness" regulation, witness "unavailability," and witness "inconsistency." (AC at pp.11-12, ¶ 48).  In order to establish personal involvement and to state a due process claim as against defendant Venetozzi, plaintiff would have to allege due process violations at the second hearing which were allegedly "affirmed" by defendant Venetozzi when he merely modified the sanction, rather than dismissing the case entirely.  However, if it is ultimately found that there were no due process violations at the second hearing, defendant Venetozzi could not be liable for due process violations that did not occur.  A more developed record will clarify the issues and allow the court to make a

him to present a certain "physical" demonstration that would have established his innocence. (AC at pp.11-12, ¶ 48).  Thus, based on the discussion above, defendant Venetozzi could be held personally responsible if a due process violation or violations occurred at the second hearing based on his affirming the result, even though he modified the penalty.  There may be an issue of qualified immunity, but the defendant has not raised the argument in his motion to dismiss for failure to state a claim.

The court in *McGriff* discussed qualified immunity and found that the defense could be raised on a motion to dismiss. 2019 WL 6033421, at *8 (citing inter alia *Sledge v. Bernstein*, No. 11 CV. 7450 (PKC/HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012)). *See Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *7, 10 (S.D.N.Y. Sept. 26, 2019) (granting qualified immunity in a motion to dismiss for failure to state a claim.)  It is unclear whether the defendant in *Johnson* raised the defense in his motion. However, the court in *McGriff* also stated that when raised in a motion to dismiss, "'the defense is held to a higher standard than if it were asserted in a motion for summary judgment.'" *Id.*  The defendants in *Colon* also were granted qualified immunity on a motion to dismiss.  However, the defendants in *Colon* did raise the defense and made arguments in support of that defense in the motion.  Defendants in this case did not raise the qualified immunity defense in their motion.[14]  In *Gomez v. Toledo*, 446 U.S. 635,

_____

proper determination.

[14] The court notes that the issue of qualified immunity is currently being litigated in the Supreme Court. *See Hammer v. Burls*, 937 F.3d 1171, 1175-76 (8th Cir. 2019), *pet. for cert. filed*, No. 19-1291, 2020 WL 2495947 (S. Ct. May 7, 2020).  One of the issues in *Burls* is whether the Court of Appeals may raise qualified immunity sua sponte even in a case in which the defendant waived the defense in the trial court.  There is a split in the Circuit courts. 2020 WL 2495947, at *12-13 (citing cases.  The Second, Eighth, and Ninth Circuits will raise the issue sua sponte. *Id.* (citing inter alia *Dean v. Blumenthal*, 577 F.3d 60, 67 (2d Cir. 2009)). *See also Ellington v. Whiting*, 807 F. App'x 67,

12

640 (1980), the Supreme Court held that qualified immunity is an affirmative defense that must be raised by the defendant.

In this case, there is very little information about any of the disciplinary hearings because plaintiff has alleged only the bare bones of his claim.  Although the ultimate merit of plaintiff's claims against defendant Venetozzi may be questionable, a motion for summary judgment would be more helpful in making a proper determination.  Thus, at this time, I will recommend granting defendant Venetozzi's motion to dismiss all plaintiff's due process claims relating to the September 16, 2016 hearing and plaintiff's due process claims relating to the August 9, 2016 incident because those disciplinary hearings were reversed by the defendant.  The court will recommend denying defendant Venetozzi's motion to dismiss plaintiff's due process claims relative to his May 2017 hearing relating to the August 11, 2016 incident.  However, based on the discussion above, the court makes no finding regarding whether the claims would survive a properly supported motion for summary judgment both on due process grounds and on qualified immunity grounds.  Defendant Venetozzi is free to make such a motion, preferably after appropriate discovery has been conducted.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants motion to dismiss (Dkt. No. 31) be **GRANTED IN ITS ENTIRETY AS TO DEFENDANT ANNUCCI**, based on defendants' motion and plaintiff's consent to dismissal as against this defendant, and it is

---

68 n.1 (2d Cir. 2020) (Circuit has discretion to consider a forfeited qualified immunity defense "where the argument presents a question of law and there is no need for additional fact-finding.")

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 31) be **GRANTED IN PART** with respect to **DEFENDANT VENETOZZI** but only as to any due process claims arising from the September 16, 2016 disciplinary hearings and with respect to any due process claims arising from the May 2017 rehearing regarding the August 9, 2016 incident, and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 31) be **DENIED IN ALL OTHER RESPECTS AS TO DEFENDANT VENETOZZI, WITHOUT PREJUDICE TO THE FILING OF A PROPERLY SUPPORTED MOTION FOR SUMMARY JUDGMENT ON HIS BEHALF**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 31, 2020

Andrew T. Baxter
U.S. Magistrate Judge

14